IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello

Civil Action No. 17-cv-02968-CMA

DARNELL PITTMAN, SR.,

    Plaintiff,

v.

JACK FOX, Warden,

    Defendant.

___

# ORDER
___

This matter is before the Court upon Applicant Darnell Pittman, Sr.'s Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 (the "Application"), filed December 11, 2017. (Doc. # 1.) United States Magistrate Judge Gordon P. Gallagher issued an Order to Show Cause directing Respondent Jack Fox to show cause why the Application should not be granted on February 24, 2018. (Doc. # 10.) Respondent timely filed a Response to the Order to Show Cause on March 19, 2018.[1] (Doc. # 14.)

---

[1] Applicant requested an extension of time to reply to Respondent's Response to the Order to Show Cause (Doc. # 12), which the Court denied on March 15, 2018 (Doc. # 13). The Court explained that its Order to Show Cause (Doc. # 10) required only Respondent to respond. (Doc. # 13.) Applicant requested reconsideration of the Court's denial (Doc. # 16) and moved for leave to file supplemental pleadings (Doc. # 15). Applicant also filed an untimely Reply to Respondent's Response to the Order to Show Cause on April 12, 2018. (Doc. # 17.) The Court declines to consider Applicant's untimely Reply (*id.*), as it denied Applicant's previous request for an extension of time to file such a reply.

This Court has carefully considered the Application, related briefing, the case file, and the applicable law, and has determined that a hearing would not materially assist in the Court's disposition of the Application. For the following reasons, the Court DENIES the Application.

## I.     BACKGROUND

Applicant is a federal prisoner currently incarcerated at the Federal Correction Institution, Administrative Maximum Facility ("ADX") in Florence, Colorado. (Doc. # 1 at 1.)

On March 15, 2016, while incarcerated at the United States Penitentiary in Coleman, Florida, Applicant was issued Incident Report No. 2827118 (the "Incident Report"), in which he was accused of threatening a penitentiary staff member, Officer Spade, with bodily harm in violation of Code 203. (*Id.* at 2); *see* (Doc. # 14-3 at 5–6.) The Incident Report alleged that earlier that same day, Officer Spade was conducting rounds in the penitentiary when Applicant "stopped [him] and stated":

> You guys think you're safe but when I have my guys meet you in the parking lot you'll see! . . . you have down time you need to go on the computer and check out Heartless Felons Ohio, you'll see what we do! SIS don't have me here for no reason and as long as you have children you're valuable!

(Doc. # 14-3 at 5.) Officer Spade described in the Incident Report that he later learned that "Heartless Felon[s] Ohio is one of the largest organized threat groupsin [sic] the state prison system" and commits "slayings, robberies, home invasions, [and] drug and gun sales." (*Id.*)

2

Applicant received the Incident Report and was advised of his rights later that afternoon. (*Id.* at 5–6.) Applicant confirmed that he understood his rights. (*Id.* at 6.) He did not provide any evidence to the investigating lieutenant, nor did he request any witnesses. (*Id.*) The Incident Report was then referred to the Unit Disciplinary Committee ("UDC") for further processing. (*Id.*)

The UDC processed the Incident Report on March 17, 2016. (Doc. # 1 at 2.) Applicant told the UDC that he "did not threaten anyone." (Doc. # 14-3 at 5.) The UDC decided to refer the matter to the Disciplinary Hearing Officer ("DHO"). (*Id.*) Applicant was given a Notice of Discipline Hearing Before the DHO and a written notice of his rights at the DHO hearing. (*Id.* at 7–8.) He requested that Officer McSherry be his staff representative at the hearing and identified two witnesses to testify on his behalf. (*Id.* at 7; Doc. # 1 at 2–3.)

DHO White conducted the hearing on March 31, 2016. (Doc. # 14-3 at 1–3.) DHO White recounted the hearing in an affidavit in support of Respondent's Response to the Order to Show Cause: "I reviewed Applicant's due process rights with him . . . Applicant confirmed he understood his rights and had no documentary evidence to present." (Doc. # 14-1 at 3–4.) Applicant told DHO White that the Incident Report was a lie—that "the charging office totally made up the allegations." (*Id.* at 5; Doc. # 1 at 4.) DHO White described the rest of the hearing:

> As requested, Officer M. McSharry appeared at the DHO hearing as Applicant's staff representative. Officer McSharry confirmed that he did meet with Applicant prior to the hearing and that he reviewed the incident report with Applicant. Officer McSharry had no additional information to add nor did he make any statements on Applicant's behalf.

3

> . . . Both witnesses [requested by Applicant] appeared at the hearing and made statements on Applicant's behalf.
>
> Applicant's first witness stated that he did not hear any threatening comments made by Applicant. Further, the witness stated that he never heard anything about the Heartless Felons Ohio . . .
>
> Applicant's second witness stated that he saw the reporting officer speaking to Applicant "respectfully." The witness stated that he heard the officer ask Applicant if he had "ever been to a certain prison before." Additionally, the witness stated, "they were just talking respectfully, later he received a shot. I know he didn't say anything threatening."

(Doc. # 14-1 at 3–4.) Applicant alleges that DHO White "excused [these two' witnesses] from the hearing without allowing Applicant's staff representative to question the witnesses." (Doc. # 1 at 5.)

DHO White concluded in her report that Applicant "committed the prohibited act of conduct which disrupts, Code 299, most like threating [sic] another with bodily harm, Code 203." (Doc. # 14-3 at 2–3.) DHO White explained that she gave "greater weight to the staff member's account of the incident" than to Applicant's denial because Officer Spade "was clear in the body of his [Incident Report] that [Applicant] implied threats towards him and his family." (*Id.* at 2.) DHO White sanctioned Applicant with a loss of twenty-seven days of good conduct time, in addition to other privilege losses. (*Id.* at 3.)

Relevant to the Application now before the Court, DHO White did not credit either witness's testimony. As to Applicant's first witness, DHO White determined that the witness "did not hear the entire conversation between [Applicant] and Officer Spade." (*Id.*) She explained that the first witness stated that he had never heard anything about the Heartless Felons Ohio during the alleged incident, but Applicant admitted he "told the officer about that group." (*Id.*) Thus, she reasoned, the first witness must not have

4

heard the exchange in full. (*Id.*) As to Applicant's second witness, DHO White concluded that the witness "did not hear the entire conversation or believed that since voices were not raised, it was a respectful conversation." (*Id.*) She also noted that "based upon the poor acoustics within the Special Housing Unit, it would be hard for an inmate housed across the hall to hear everything [Applicant] was saying without [Applicant's] voice being raised." (*Id.*)

In his Application, Applicant contends that DHO White "was not an impartial fact-finding decision-making officer" and violated his procedural due process rights. (Doc. # 1 at 11.) He faults DHO White for "discredit[ing] [his] witnesses' testimony" and for substituting in "her own opinion" about the witnesses without an adequate basis for doing so. (*Id.* at 9.) As to the first witness, Applicant states that DHO White abused her authority by "form[ing] an opinion that speak [sic] to the nature of what [the first witness] could or could [not] hear; whereas, he clearly testified as to what he observed." (*Id.*) With regard to the second witness, Applicant argues that DHO White had no basis to speculate about the volume levels of Applicant's and Officer Spade's voices during the alleged exchange. (*Id.*) Applicant requests that the Court "expunge the findings of guilt regarding [the Incident Report] and restore [his] 27 days of good time credit." (*Id.* at 13.)

## II. LEGAL STANDARD

### A. 28 U.S.C. § 2241

"[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). Petitions for

5

habeas corpus made pursuant to Section 2241 "are used to attack the execution of a sentence," whereas petitions made pursuant to Sections 2254 and 2255 "are used to collaterally attack the validity of a conviction and sentence." *McIntosh v. U.S. Parole Comm'n*, 115 F.3d 809, 811 (10th Cir. 1997). Habeas corpus relief pursuant to Section 2241 may be warranted if the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). "A habeas petition under 28 U.S.C. § 2241, brought in the district where the inmate is confined, is a proper vehicle for challenging the loss of good-time credits." *Bornman v. Berkebile*, No. 14-cv-01997-MJW, 2014 WL 5396169, at *2 (D. Colo. Oct. 23, 2014) (citing *Howard v. U.S. Bureau of Prisons*, 487 F.3d 808, 811 (10th Cir. 2007)); *see also McIntosh*, 115 F.3d at 811–12.

    A habeas petitioner "is entitled to receive an evidentiary hearing so long as his allegations, if true and if not contravened by the existing factual record, would entitle him to habeas relief." *Miller v. Champion*, 161 F.3d 1249, 1253 (10th Cir. 1998); *see also United States v. Lopez*, 100 F.3d 113, 119 (10th Cir. 1996) ("In response to a [28 U.S.C.] § 2255 motion, the district court must hold an evidentiary hearing on the prisoner's claims unless the motion and files and records in the case conclusively show that the prisoner is entitled to no relief." (quotations omitted)); *Wilson v. Oklahoma*, 335 F. App'x 783, 784 (10th Cir. 2009) (finding no error where district court denied applicant evidentiary hearing on 28 U.S.C. § 2241 petition where "nothing in the record [ ] indicate[d] [the applicant] is entitled to any relief").

## B. DUE PROCESS FOR DISCIPLINARY PROCEEDINGS

"It is well settled that an inmate's liberty interest in his earned good time credits cannot be denied without the minimal safeguards afforded by the Due Process Clause of the Fourteenth Amendment." *Mitchell v. Maynard*, 80 F.3d 1433, 1444 (10th Cir. 1996) (citing *Taylor v. Wallace*, 931 F.2d 698, 700 (10th Cir. 1991)). The Supreme Court has held, however, that "[p]rison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). To meet the standards of due process in a disciplinary proceeding under *Wolff*,

> the inmate must receive: (1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action.

*Superintendant, Mass. Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 454 (1985). Additionally, "where the inmate is illiterate or 'the complexity of the issue makes it unlikely that the inmate will be able to collect and present the evidence necessary for an adequate comprehension of the case,'" due process also requires that the inmate be provided with the aid of a staff representative. *Jordan v. Wiley*, No. 06-cv-02090-WYD, 2009 WL 1698509, *9 (D. Colo. June 17, 2009) (quoting *Wolff*, 418 U.S. at 570).

These due process requirements for a disciplinary hearing are satisfied if "**some evidence** supports the decision by the prison disciplinary board to revoke good time credits." *Hill*, 472 U.S. at 455 (emphasis added); *Edwards v. Balisok*, 520 U.S. 641, 648 (1997). Under this "some evidence" standard, "it is sufficient that there was some

7

evidence from which the conclusion of the administrative tribunal could be deduced and that it committed no error so flagrant as to convince a court of the essential unfairness of the [proceeding]." *United States ex rel. Vajtauer v. Comm'r of Immigration*, 273 U.S. 103, 106 (1927); *see also Hill*, 472 U.S. at 455–56 ("the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board."). "Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence." *Hill*, 472 U.S. at 455.

Errors made by prison officials in failing to satisfy these due process requirements are subject to harmless error review. *Farrakhan-Muhammad v. Oliver*, 688 F. App'x 560, 564–65 (10th Cir. 2017) (citing *Grossman v. Bruce*, 447 F.3d 801, 805 (10th Cir. 2006) (holding that the prison official's error in denying witness testimony was subject to harmless error review)).

**C.    *PRO SE* LITIGANTS**

The Court acknowledges that Applicant proceeds *pro se*. "A *pro se* litigant's pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (citing *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972)). "The *Haines* rule applies to all proceedings involving a *pro se* litigant." *Id.* at 1110 n.3. The Court, however, cannot be a *pro se* litigant's advocate. *See Yang v. Archuleta*, 525 F.3d 925, 927 n.1 (10th Cir. 2008).

### III. <u>ANALYSIS</u>

Applicant's sole claim alleges a procedural due process violation. (Doc. # 1 at 2.) To the best of the Court's understanding, Applicant asserts that DHO White violated his constitutional rights at the hearing on March 31, 2016, because DHO White discounted his witnesses' testimony and introduced her own "speculative opinion" about what the witnesses could possibly have heard or not heard. (*Id.* at 11.) The Court assumes that Applicant is therefore arguing that he was deprived of "an opportunity . . . to call witnesses and present documentary evidence in his defense." *See Hill*, 472 U.S. at 454.[2]

The Court is satisfied that Applicant was not deprived of his right under *Wolff* "to call witnesses and present documentary evidence in his defense." It is undisputed that DHO White **did** receive testimony from Applicant's two requested witnesses at the hearing. *Wolff* requires no more of a decision-maker. It certainly does not **require** the decision-maker to credit all testimony received. The Court is also satisfied that "some evidence" supports DHO White's assessment of the witnesses' testimony. She clearly explained in her report why she did not credit their testimony: their testimony could not be reconciled with Applicant's own admissions and with the physical space in which they allegedly overheard the incident. *See* (Doc. # 14-3 at 3.) Moreover, Applicant has not alleged how DHO White's assessment of the witnesses' testimony erred or why her assumptions were flawed. The record thereby refutes Applicant's conclusory assertion

---

[2] Applicant does not allege that he was deprived of the remaining procedural due process requirements identified in *Wolff*.

that he was denied of his due process rights at the hearing. The Court finds no due process violation.

## IV. **CONCLUSION**

Therefore, the Application for Writ of Habeas Corpus (Doc. # 1) is DENIED and the case dismissed. It is

FURTHER ORDERED that Applicant's Request for Leave to File Supplemental Pleading (Doc. # 15) is DENIED. It is

FURTHER ORDERED that Applicant's Request for Reconsideration for an Extension of Time to Submit a Rebuttal Response (Doc. # 16) is DENIED.

DATED: April 23, 2018

BY THE COURT:

_____
CHRISTINE M. ARGUELLO
United States District Judge